IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____ :
                                                          :
PENNSYLVANIA PROTECTION AND          :
ADVOCACY, INC.                                      :
                                                          : Filed Via ECF System
                              Plaintiff,              :
                                                          :
                    v.                                   : Civil Action No. _____
                                                          :
JEFFREY A. BEARD, Ph.D., in his          :
official capacity as Secretary of the         :
Pennsylvania Department of Corrections, :
                                                          :
                              Defendant.            :
_____:

## COMPLAINT

### I.    Introduction

1.    Plaintiff, Pennsylvania Protection and Advocacy, Inc. (PP&A), the organization designated pursuant to federal law to investigate abuse and neglect of people with disabilities, brings this lawsuit to challenge the Defendant's *de facto* denial of access to inmates' mental health records by charging unreasonable fees for such access and refusing to allow PP&A to bring a portable copier to the state prisons to copy the records itself.  The Defendant's refusal to provide the records at either a reasonable cost or to allow PP&A to copy the records itself violates the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801-10827.

### II.    Jurisdiction and Venue

2.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331.  Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

3.      Plaintiff's claims are authorized by 42 U.S.C. § 1983 and the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801-10827.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) since Defendant resides in Dauphin County and a substantial part of the events and omissions that give rise to this Complaint occurred in this District.

## III.   <u>Parties</u>

5.      Plaintiff, Pennsylvania Protection and Advocacy, Inc. (PP&A), is a non-profit Pennsylvania corporation. The Commonwealth has designated PP&A as the agency with the responsibility under the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. §§ 10801-10827, to advocate for and protect the rights of individuals with disabilities and to investigate abuse and neglect of individuals with mental illness. The PAIMI Act grants PP&A the right to pursue legal remedies on behalf of persons protected by those statutes. 42 U.S.C. § 10805(a)(1)(B).

6.      Defendant, Jeffrey A. Beard, Ph.D., is the Secretary of the Pennsylvania Department of Corrections (DOC). Defendant Beard administers and oversees Pennsylvania's State Correctional Institutions (SCIs) and is the responsible decision-maker for the policies and practices challenged in this lawsuit. Defendant Beard is sued only in his official capacity for declaratory and injunctive relief for actions and inactions taken under color of state law.

2

IV.   <u>Facts</u>

7.     PP&A received complaints that inmates with mental illness in Pennsylvania's SCIs had been disciplined for infractions attributable to their mental illness; that they were disproportionately sanctioned for such infractions by placement in the SCIs' Restrictive Housing Units (RHUs) in comparison with inmates who did not have mental illness; and that their mental conditions deteriorated while they were confined in the RHUs in which they were isolated 23 hours a day seven days per week.

8.     As a result of these complaints, PP&A began an investigation in 2005 concerning the potential neglect of SCI inmates with mental illness who are placed in the RHUs in the SCIs, which are "facilities" covered by the PAIMI Act, 42 U.S.C. § 10801(3).

9.     As part of this investigation, PP&A staff, in accordance with their statutory authority under the PAIMI Act, 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42, have visited six SCIs between June 2005 and February 2006:  SCI-Fayette; SCI-Graterford; SCI-Cresson; SCI-Huntingdon; SCI-Mahanoy; and SCI-Muncy.

10.     During their visits, PP&A staff, in accordance with their statutory authority under the PAIMI Act, 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42, interviewed inmates with mental illness in each of these facilities.

11.     During their interviews with inmates and in an effort to further the investigation, PP&A staff secured the written authorizations of more than 100 inmates to allow PP&A to request their records from DOC.  The PAIMI Act requires facilities, such as the SCIs, to provide PP&A with access to all records of

individuals with mental illness who authorize such access.   42 U.S.C. § 10805(a)(4)(A).

12.    During most of their visits to the SCIs, PP&A staff requested that DOC produce for inspection records of certain inmates who had authorized such disclosure.  In those instances, SCI staff produced those records for PP&A staff to review during the visits without the assessment of any charges or fees.

13.    At the conclusion of their visits to SCI-Fayette, SCI-Muncy, SCI-Huntingdon, and SCI-Mahanoy, PP&A staff made oral requests that those facilities send PP&A copies of designated inmates' records and provided the facilities with the inmates' authorization forms to allow DOC to produce those documents to PP&A.

14.    In response to PP&A's records requests relating to inmates at SCI-Fayette, SCI-Muncy, and SCI-Mahanoy, the Superintendents of those facilities submitted invoices to PP&A requesting payments for copying costs and retrieval fees prior to the production of the records.

a.    On or around July 29, 2005, SCI-Fayette submitted invoices totaling $1,435.12, consisting of $894.62 for "medical records" and $540.50 for non-medical records.  These charges included approximately $422 for "search and retrieval fees" and copying charges ranging between $0.30 and $1.17 per page for medical records and $0.25 and $1.00 per page for non-medical records.

b.    On or around August 18, 2005, SCI-Muncy submitted an invoice to PP&A for $1,055.56, consisting of $800.71 for "medical records," $243.25 for non-medical records, and $11.60 for postage.  These charges included

4

approximately $309.80 for "search and retrieval fees" and copying charges ranging between $0.30 and $1.17 per page for medical records and $0.25 and $1.00 per page for non-medical records.

        c.    On or around November 8, 2005, SCI-Mahanoy submitted a revised invoice to PP&A totaling $863.60. These charges included $244.72 for search and retrieval fees for 14 inmates' records and copying charges ranging from $0.30 to $1.17 per page.

        15.    Following their visit to SCI-Huntingdon, PP&A staff made an oral request for copies of certain inmates' records to the Superintendent of that facility. On or around October 6, 2005, SCI-Huntingdon submitted invoices to PP&A totaling $980.95. These charges included $244.72 for "search and retrieval" fees and copying charges ranging from $0.30 to $1.17 per page. Although Invoice Nos. 21108 through 21120 broke down the charges for each of thirteen identified inmates, Invoice No. 21107, in the amount of $146.63 (including a search and retrieval fee, copying charges for 266 pages, and postage), did not identify any inmate connected with these charges. Although it submitted an invoice to PP&A, SCI-Huntingdon also produced the records without receipt of payment from PP&A.

        16.    Due to the dispute over charges assessed by DOC, PP&A staff informed staff at SCI-Cresson and SCI-Graterford (which they visited, respectively, in January 2006 and February 2006) that PP&A would not request that those facilities produce to PP&A copies of specific inmate records until the dispute was resolved. PP&A, however, did provide those facilities' staff with written authorizations from inmates in those facilities for release of their records to PP&A.

17.    The charges assessed for the records requested by PP&A are apparently based on DOC Policy No. DC-ADM 003 titled "Release of Information."

18.    DOC's Release of Information Policy provides that, for non-medical records, DOC assesses a $15.00 search and retrieval fee and $1.00 per page for the first copy and $0.25 per page for subsequent copies.

19.    DOC's Release of Information Policy provides that, for medical records, DOC assesses a $17.48 "flat fee" to supply requested records and charges $1.17 per page for the first 20 pages, $0.88 per page for the next 40 pages, and $0.30 per page for the remaining pages.

20.    DOC claims that the portion of its Release of Information Policy relating to charges for "medical records" is based on the Pennsylvania Medical Records Act, 42 Pa. Cons. Stat. Ann. § 6152.  The Pennsylvania Medical Records Act governs charges for the production of medical records pursuant to a subpoena or request for records in the context of a judicial or administrative proceeding.

21.    DOC's copying charges assessed against PP&A are in excess of those necessary to offset its duplication costs.

a.    DOC's copying charges are in excess of those that would be assessed by any private copying company and those assessed by the courts.

b.    Under DOC's Release of Information Policy, the charge for copies of documents an inmate has in his possession or for copies of materials available to all inmates (such as library materials or newspaper articles) is $0.10 per page.

c.     Under its Release of Information Policy, DOC's charges for retrieving and photocopying medical records exceed those imposed for non-medical records.

22.     Following receipt of the invoices from SCI-Fayette and SCI-Muncy, PP&A's Chief Executive Officer, Ilene W. Shane, sent a letter dated August 29, 2005 to Defendant Beard.   In that letter, Ms. Shane, citing 42 C.F.R. § 51.41(e), agreed that the PAIMI Act allowed DOC to assess PP&A "reasonable charge[s] to offset duplicating costs" for the requested records.   Ms. Shane, however, asserted that the PAIMI Act did not allow the assessment of "search and retrieval" fees.   Ms. Shane further asserted that the copying charges assessed for medical records were not reasonable.   Ms. Shane also informed DOC that the Pennsylvania Medical Records Act did not apply to PP&A's request for medical records from the SCIs and, even if it did, it could not trump the PAIMI Act.

23.     Recognizing that DOC is entitled to compensation for a reasonable duplication fee, PP&A with its August 29, 2005 letter, tendered a check of $359.40 as payment for the copies requested from SCI-Fayette and SCI-Muncy. This reflected a reasonable cost of $0.10 per page for 3,594 pages.

24.     By letter dated September 27, 2005, DOC's counsel rejected PP&A's assertion that it was not subject to the charges established by the Pennsylvania Medical Records Act and that DOC's charges were unreasonable. DOC did not accept PP&A's tendered check as payment in full.

25.     Subsequent efforts by PP&A and its counsel to negotiate a compromise concerning the charges proved unavailing.   DOC insisted that PP&A

must pay the search and retrieval fees and copying charges identified in its Release of Information Policy.

26.    By letter dated January 17, 2006, PP&A's counsel suggested that PP&A staff could bring a portable copier to the SCIs and photocopy any desired records while on-site.  Since DOC has produced the requested inmate records to PP&A staff during their visits to the SCIs (without assessment of search and retrieval fees) and since PP&A staff, rather than SCI staff, would undertake the copying, this solution could have resolved the controversy by allowing PP&A to copy the desired records without incurring the unreasonable charges assessed by DOC.

27.    Citing DOC's "longstanding policy of not allowing such personal electronic equipment" into SCIs, DOC's counsel unequivocally rejected PP&A's proposal to use a portable copier by letter dated February 1, 2006.

a.    A portable copier is not "personal electronic equipment," and DOC provided no written policy to support its assertion to the contrary nor has DOC explained why PP&A's use of a portable copier would create any security concerns.

b.    Further, PP&A staff reviewed requested records related to the inmates at SCI-Fayette, SCI-Muncy, SCI-Huntingdon, and SCI-Mahanoy in either the medical records departments or administrative areas of those facilities -- areas which are not considered "secured" and to which inmates have no access.  It, therefore, would not pose any security concern for PP&A staff to bring a portable

8

copier and copy inmate records in the SCIs since the copier would not be in a location that poses any security risk.

28.   DOC's counsel also stated that PP&A's proposal to bring its own copier and have PP&A staff copy the records was untenable because it would allow PP&A staff to have "unfettered access" to "all inmate records."   PP&A staff, however, would not have to search through all inmates records but, instead, would simply copy those records produced by SCIs to PP&A staff during their visits. PP&A reviewed documents at SCI-Fayette, SCI-Muncy, SCI-Huntingdon, and SCI-Mahanoy produced by DOC staff at those facilities without the imposition of search and retrieval charges.

29.   PP&A has no adequate remedy at law.

## V.   <u>Claim -- Violation of the PAIMI Act</u>

30.   Paragraphs 1 through 29 are incorporated herein by reference.

31.   The PAIMI Act provides that PP&A "shall … have access to all records" of any individual who authorizes PP&A to have such access.   42 U.S.C. § 10805(a)(4)(A).

32.   Under 42 U.S.C. § 1983, Defendant Beard may not act under color of state law to deny PP&A access to mental health records to which they are entitled under PAIMI.

33.   PP&A has sought from DOC copies of certain specified records of at least 100 SCI inmates who authorized PP&A to access their DOC records.

9

34.   PP&A is entitled to receive from DOC copies of the requested records "subject to a reasonable charge to offset duplicating costs." 42 C.F.R. § 51.41(e).

35.   Defendant's assessment of "search and retrieval fees" or other flat fees as a prerequisite to providing PP&A with legitimately requested inmate records violates 42 U.S.C. § 1983 and the PAIMI Act and constitutes a *de facto* denial of PP&A's access to records that it authorized and entitled to receive.

36.   The copying costs assessed by Defendant as a prerequisite to producing to PP&A legitimately requested inmate records exceed those necessary to offset its duplicating costs and, as such, violates 42 U.S.C. § 1983 and the PAIMI Act and constitutes a *de facto* denial of PP&A's access to records that it is authorized and entitled to receive.

37.   DOC's refusal to allow PP&A to bring a portable copier to the SCIs to allow PP&A staff to photocopy legitimately requested inmate records violates 42 U.S.C. § 1983 and the PAIMI Act and constitutes a *de facto* denial of PP&A's access to records that it is authorized and entitled to receive.

38.   To the extent that Defendant relies on the Pennsylvania Medical Records Act to justify its assessment of fees and charges to PP&A for copying inmate medical records, that state law is preempted by the PAIMI Act.

**VI.   <u>Relief Requested</u>**

39.   Plaintiff respectfully requests that the Court award the following relief:

      a.   exercise jurisdiction over this action;

10

b.      issue appropriate declaratory relief, including declaring that Defendant violated 42 U.S.C. § 1983 and the PAIMI Act by its *de facto* denial of legitimately requested inmate records.

c.      issue appropriate injunctive relief, including requiring DOC to permit PP&A to bring a portable copier to the SCIs and have PP&A staff copy requested inmate records; prohibiting Defendant's assessment of search and retrieval fees or other flat fees as a prerequisite to the production of inmate records; prohibiting Defendant from assessing copying charges in excess of those necessary to offset DOC's duplication costs; and prohibiting Defendant from applying the Pennsylvania Medical Records Act to PP&A to determine the charges to be assessed to provide records legitimately requested under the PAIMI Act.

d.      grant such other relief as may be appropriate, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,


Dated:  March 16, 2006            By:    s/ Robert W. Meek
                                         Robert W. Meek
                                         PA 27870
                                         Disabilities Law Project
                                         1315 Walnut Street, Suite 400
                                         Philadelphia, PA  19107-4798
                                         (215) 238-8070
                                         (215) 772-3126 (fax)
                                         RMeek@dlp-pa.org

                                         Counsel for Plaintiffs

11